UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FAITH NORMAN,<br><br>       Plaintiff,<br><br>   v.<br><br>GERBER PRODUCTS COMPANY,<br><br>       Defendant. | Case No. 21-cv-09940-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS, WITH LEAVE TO AMEND, AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 30 |

Now before the Court for consideration is Gerber Products Company's ("Defendant") motion to dismiss Faith Norman's ("Plaintiff") First Amended Complaint ("FAC"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it hereby GRANTS, IN PART, and DENIES, IN PART, Defendant's motion to dismiss, with leave to amend.

## BACKGROUND

Defendant manufactures and sells baby food and infant formula nationwide. (FAC ¶ 9.) In 2021, Plaintiff purchased Defendant's Gerber Good Start Soy 2 Powder Infant & Toddler Formula from various retail stores in San Jose. (*Id.* ¶¶ 7, 44.) The product Plaintiff purchased included the graphic depicted below on the front of the packaging (the "Image"):



In addition to the product she purchased, Plaintiff challenges the labelling on a number of other products (the "Products"), which also include the Image on the front of the packaging.  (*Id.* ¶ 4.)  On at least some of the Products, the Defendant includes the following statement on the rear of the packaging above the ingredients list: "NON GMO Not Made With Genetically Engineered Ingredients" (the "Statement").  (*See id.* ¶ 44; *see also e.g.,* ¶¶ 45-46.)[1]  The Court refers to the Image and the Statement collectively as the "Non GMO Claim."

Plaintiff brings this putative class action to challenge Defendant's Non GMO Claim on its Products.  (*Id.* ¶ 1.)  Plaintiff alleges that although Defendant uses the Non GMO Claim, the Products actually contain ingredients derived from genetically modified food sources and are, therefore, not non-GMO.  (*Id.* ¶ 3.)  Plaintiff alleges she "reviewed the labeling, packaging, and marketing materials of her Products and saw the . . . claims that . . . the Products are purportedly 'Non-GMO'" in deciding whether to purchase the Products.  (*Id.* ¶ 7.)  Plaintiff believed the Products did not contain genetically modified ingredients or ingredients sourced from animals derived on GMO feed and alleges she would not have purchased the Products if she had known the truth.  (*Id.*)

Plaintiff alleges nine causes of action against Defendant: (1) violation of California's Unfair Competition Law ("UCL"), Business and Professions Code sections 17200, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), Business and Professions Code sections 17500, *et seq.*; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code sections 1750*, et seq.*; (4) breach of express warranty; (5) breach of the implied warranty of merchantability; (6) unjust enrichment/restitution; (7) negligent misrepresentation; (8) fraud; and (9) fraudulent misrepresentation.  (*Id.* ¶ 6.)

The Court will address additional facts as necessary in the analysis.

---

[1]     Plaintiff has not included a photograph of the rear side of the packaging for each Product she is challenging and, instead, includes images of the ingredient lists.  However, it is possible to see portions of the Statement on many of the photographs Plaintiff has included in the FAC.  (*Compare* FAC ¶¶ 44-46, *with id.* ¶¶ 49-51, 54-56.)

**ANALYSIS**

A.     **Applicable Legal Standards.**

Under Federal Rule of Civil Procedure 12(b)(1)[2], a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). In order for a district court to have subject matter jurisdiction over a plaintiff's claims, a plaintiff must present a live case or controversy, as required by Article III of the U.S. Constitution. *See* U.S. Const. art. III section 2, cl. 1. In order for there to be a case or controversy within the meaning of Article III, a plaintiff must have standing to pursue their claims.

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Where, as here, a plaintiff asserts a claim sounding in fraud, the plaintiff must "state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). A claim sounds in fraud if the plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that

---

[2]     Unless otherwise noted, all further citations to a "Rule" are to the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103

2   (9th Cir. 2003).  The particularity requirement of Rule 9(b) is satisfied if the complaint "identifies

3   the circumstances constituting fraud so that a defendant can prepare an adequate answer from the

4   allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see*

5   *also Vess*, 317 F.3d at 1106.  Accordingly, "[a]verments of fraud must be accompanied by 'the

6   who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106

7   (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

8          If the allegations are insufficient to state a claim, a court should grant leave to amend

9   unless amendment would be futile.  *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

10  Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-

11  47 (9th Cir. 1990).  If a plaintiff has previously amended a complaint, a court has "broad"

12  discretion to deny leave to amend.  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.

13  1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

**B.     Standing.**

**1.     Plaintiff's allegations are not sufficient to establish standing to seek equitable restitution.**

17         Defendant moves to dismiss Plaintiff's claim for equitable restitution on the basis that she

18  does not allege she lacks an adequate remedy at law.  It is well-established that claims for relief

19  under the FAL and the UCL are limited to restitution and injunctive relief.  *See, e.g., Korea Supply*

20  *Co. v. Lockheed Martin Corp*, 29 Cal. 4th 1134, 1146-49 (2003).  In contrast, the CLRA provides

21  for equitable relief and for damages.  In *Sonner v. Premier Nutrition Corporation*, the Ninth

22  Circuit held "that the traditional principles governing equitable remedies in federal courts,

23  including the requisite inadequacy of legal remedies, apply when a party requests restitution under

24  the UCL and CLRA in a diversity action."  971 F.3d 834, 843-44 (9th Cir. 2020).

25         Here, Plaintiff fails to allege that she lacks an adequate remedy at law for her restitution

26  claim.  Plaintiff alleges that she "may lack an adequate remedy at law, if for instance, damages

27  resulting from her purchase of the Product is determined to be in an amount less than the premium

28  price of the Product."  (FAC ¶¶ 103, 112, 122, 153.)  However, Plaintiff's allegations do not show

how restitution would go beyond the damages available to her.  Plaintiff fails to allege any specific facts showing that damages are "inadequate or incomplete."  *Sonner*, 971 F.3d at 844; *see also Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021).  Further, Plaintiff's allegations are conditional because Plaintiff claims she "may" lack an adequate remedy at law "if" damages are less than restitution.  *See, e.g., Johnson v. Trumpet Behavioral Health, LLC*, No. 3:21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (concluding conditional allegations insufficient to plead that plaintiffs actually lacked an adequate remedy of law).  Plaintiff's allegations are not enough to meet *Sonner*'s rule because Plaintiff does not allege she lacks adequate legal remedies.  Instead, as in *Johnson*, Plaintiff alleges she "seek[s] equitable relief *to the extent* legal remedies are inadequate or *if* legal remedies are inadequate."  *Id.* (emphasis in original).

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's claim for equitable restitution.[3]  Because it is possible that Plaintiff could plead that she lacks an adequate remedy at law, the Court GRANTS Plaintiff leave to amend.

### 2.    Plaintiff's allegations are sufficient to establish standing to seek injunctive relief.

In addition to seeking restitution, Plaintiff seeks prospective injunctive relief.  In *Zeiger v. WellPet LLC*, the court reasoned that damages for past harm were not an adequate remedy for prospective harm caused by alleged false advertising because damages "would [not] ensure that [the plaintiff] (and other consumers) can rely on WellPet's representations in the future."  526 F. Supp. 3d 652, 687 (N.D. Cal. 2021); *see also Adams v. Cole Haan, LLC*, No. 8:20-CV-00913-JWH-DFMx, 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021) (finding monetary damages "would not necessarily be sufficient to remedy" harm from alleged false advertising).

Plaintiff alleges that she lacks an adequate remedy at law because absent an injunction,

---

[3]    Plaintiff's claim for unjust enrichment also seeks equitable restitution.  (FAC ¶ 152.)  As discussed above, Plaintiff fails to demonstrate that she lacks an adequate remedy at law for her restitution claim.  Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's claim for unjust enrichment.

Defendant will continue to deceive consumers.  Here, monetary damages would not necessarily be sufficient to remedy the alleged harm insofar as Plaintiff alleges that she would like to keep buying Defendant's Products but is deterred from doing so because she will be unable to determine if the Products' labeling is truthful.  (FAC ¶ 8.)  The Court concludes that Plaintiff has plausibly alleged that she lacks an adequate remedy at law for injunctive relief.  *See Moran v. Bondi Sands (USA) Inc.*, No. 21-cv-07961-JSW, 2022 WL 1288984, at *6 (N.D. Cal. Apr. 29, 2022); s*ee also Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (declining to apply *Sonner* to bar UCL claims for prospective injunctive relief because "the prospect of paying damages is sometimes insufficient to deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice").

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's claim for injunctive relief.

### 3.  Plaintiff sufficiently alleges she has Article III standing to pursue claims for products she did not purchase.

Plaintiff alleges she purchased one of the Products listed in the FAC, which did not contain animal byproducts.  Defendant argues that she lacks standing to pursue claims based on Products she did not purchase, which would include Products that are derived from animals raised on GMO feed.  "[T]here is no controlling authority [in the Ninth Circuit] on whether Plaintiffs have standing for products they did not purchase."  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012).  Despite the lack of controlling authority, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."  *Id.* at 869; *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082-83 (N.D. Cal. 2014) ("Courts in this district have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products.").  "[C]ourts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling" when deciding whether products are substantially

1    similar.  *Figy*, 67 F. Supp. 3d at 1083.  Diverse products that bear similar labels have been

2    considered "substantially similar."  *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH,

3    2021 WL 1788397, at *4 (N.D. Cal. May 5, 2021) (collecting cases).  Once a court determines the

4    products are sufficiently similar, "any concerns regarding material differences in the products can

5    be addressed at the class certification stage."  *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000,

6    1006 (N.D. Cal. 2012).

7         Here, Plaintiff alleges that the Products are substantially similar in the following ways: (1)

8    all are manufactured at Defendant's factories in Cincinnati, Ohio; (2) all contain the identical Non

9    GMO Claim on the front of the packaging; and (3) the misleading effect of the Non GMO Claim

10   is the same across all the Products in terms of what a reasonable consumer would understand

11   "non-GMO" to mean.  (FAC ¶ 41.)  *See Maisel*, 2021 WL 1788397, at *5 (finding substantial

12   similarity among diverse products because all products were manufactured by defendant, all

13   products contained the plant-based representations on the front of the packaging, and all products

14   had the same misleading effect).

15        Based on these allegations, the Court finds Plaintiff has sufficiently alleged that the

16   Products she did not purchase are substantially similar to the Product she did purchase.  The

17   differences between the Products raised by Defendant in the motion may impact class certification

18   or summary judgment, but the differences are not enough to defeat substantial similarity for the

19   purposes of standing.  *See Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280-WHO, 2014 WL 1266848,

20   at *12 (N.D. Cal. Mar. 26, 2014) (differences in ingredients and labeling on products did not

21   render the products sufficiently dissimilar to defeat standing where the products contained similar

22   "natural" representations and the challenged harm was the same).

23        Accordingly, the Court DENIES Defendant's motion on this basis.

24   **C.      Failure to State a Claim.**

25        **1.      Plaintiff's allegations satisfy Rule 9(b)'s heightened pleading standard.**

26        Defendant argues Plaintiff fails to meet Rule 9(b)'s heightened pleading standard.  More

27   specifically, Defendant argues that Plaintiff did not sufficiently allege "what" is false and "why" it

28   is false.  Plaintiff alleges she "reviewed the labeling, packaging, and marketing materials" on the

1    Gerber Good Start Soy 2 Powder Infant & Toddler Formula, and "saw the . . . claims that . . . the

2    Products are purportedly 'Non-GMO' infant formula" prior to purchasing the Product.  (FAC ¶ 7.)

3    Plaintiff also alleges the various retail stores from which she purchased the Product.  (*Id.*)

4    Plaintiff includes photographs of the Products she challenges, which include the Image and the

5    Statement.  (*Id.* ¶¶ 44-75.)  The Court concludes Plaintiff's allegations satisfy Rule 9(b)'s

6    heightened pleading standard because she sufficiently "identifies the circumstances constituting

7    fraud so that [D]efendant can prepare an adequate answer from the allegations."  *Moore*, 885 F.2d

8    at 540.  Plaintiff has alleged the "who, what, when, where, and how" of the challenged

9    misconduct.  (FAC ¶¶ 78-84.)  Further, as discussed below, the facts are sufficient to allege a

10   reasonable consumer would be deceived.  Therefore, Plaintiff sufficiently alleges why Defendant's

11   Non GMO Claim is false.

12          Accordingly, the Court DENIES Defendant's motion on this basis.

13          **2.      Plaintiff states a claim, in part.**

14          Plaintiff defines GMOs as organisms that have been altered through genetic modification,

15   which she alleges is "an artificial laboratory-based technique that is specifically designed to enable

16   the transfer of genes between unrelated or distantly related organisms," and she sets forth a list of

17   ingredients she alleges are GMOs.  (*Id.* ¶¶ 14, 42.)[4]  Defendant breaks down that list into three

18   categories: (1) ingredients allegedly derived from genetically modified crops or food sources; (2)

19   ingredients allegedly genetically engineered in a laboratory setting through the use of

20   biotechnologies; and (3) ingredients allegedly sourced from animals raised on GMO feed.

21   Defendant argues Plaintiff fails to state a claim because she does not plausibly allege that the

22   ingredients under Categories 2 and 3 fall within her definition of GMO.[5]

---

[4]      Plaintiff also alleges that many of the ingredients are "identified as" GMOs by the Institute for Responsible Technology.  As Defendant notes, the guide Plaintiff references actually states the ingredients "may be made from GMOs."  (*See id.* n.35 (citing https://www.pilgrimsmarket.com/pdf/Non-GMO-Shopping-Guide.pdf at 14 (last visited Dec. 14, 2022).)  Therefore, the Court has not accepted as true allegations that these ingredients are, in fact, GMOs.

[5]      Defendant does not argue the ingredients under Category 1 do not plausibly fit Plaintiff's definition of GMO.

United States District Court
Northern District of California

1    With respect to ingredients under Category 2, Defendant argues Plaintiff fails to allege

2    how the ingredients have been genetically modified from the required process outlined in her

3    definition of GMO.  Plaintiff describes genetic modification as a "transfer of genes," but Plaintiff

4    does not allege that the ingredients underwent this transfer of genes process.  *See, e.g., Gallagher*

5    *v. Chipotle Mexican Grill, Inc.*, No. 15-cv-03952-HSG, 2016 WL 454083, at *4 (N.D. Cal. Feb. 5,

6    2016) (granting motion to dismiss and concluding plaintiff's definition of GMO was "inconsistent

7    with her interpretation of defendant's GMO claims" because she did not allege that the ingredients

8    had "been altered using . . . genetic engineering techniques", as required under her definition of

9    GMO).  Without these allegations, Plaintiff fails to allege the ingredients that would fall within the

10   scope of Category 2 are GMOs.

11   In regard to ingredients in Category 3, Defendant argues Plaintiff's definition of GMO

12   would not include Category 3 ingredients, *i.e.* Plaintiff does not allege that animals which

13   produced the byproducts are genetically modified by eating GMO feed nor does she allege how

14   the resulting byproducts are genetically modified.  In support of its argument, Defendant relies

15   upon *Gallagher*, 2016 WL 454083 and *Pappas v. Chipotle Mexican Grill*, No. 16-CV-612-MMA

16   (JLB), 2016 WL 11703770 (S.D. Cal. Aug. 31, 2016).  In *Gallagher*, the court granted defendant's

17   motion to dismiss because plaintiff did not allege that defendant's meat and dairy ingredients were

18   derived from genetically modified animals despite plaintiff's argument that a reasonable consumer

19   would interpret non-GMO to mean meat and dairy ingredients produced from animals that have

20   never consumed any genetically modified substances.  2016 WL 454083, at *4.  Similarly, in

21   *Pappas*, the court found plaintiff's definition of non-GMO to be implausible.  There, the plaintiff

22   argued a reasonable consumer would believe the term non-GMO would include animals that have

23   not consumed feed containing GMOs.  *Pappas*, 2016 WL 11703770, at *7.  However, the plaintiff

24   did "not allege that by eating feed with genetically modified ingredients, animals themselves

25   become genetically modified organisms."  *Id.*

26   The Court finds *Gallagher* and *Pappas* distinguishable from the present case.  In those

27   cases, the plaintiffs failed to explain how, under their definitions of GMO, a reasonable consumer

28   would understand "non-GMO" to mean meat and dairy ingredients from animals that did not

consume GMO feed.  Here, Plaintiff alleges that reasonable consumers would understand the Non

GMO Claim on the front and rear of the packaging to mean that the Products "(1) [do] not contain

GMOs and [are] not sourced from, or derived from any GMOs; and (2) [do] not contain animal

products . . . that have a diet of GMO feed, GMO contaminated feed and/or genetically modified

or engineered feed."  (FAC ¶ 28.)  Plaintiff sufficiently alleges a reasonable consumer would have

this understanding of the term non-GMO because of the prevalence and recognizability of the

Non-GMO Project, the efforts of the federal government, and market research into a reasonable

consumer's interpretation of the term non-GMO.  (*Id.* ¶¶ 24-27.)[6]

    Additionally, Plaintiff's specific theory of a reasonable consumer's understanding of the

term is that non-GMO ingredients are not derived from animals fed genetically modified feed.

Plaintiff's claims do not rest on a theory that the animals have themselves become genetically

modified from consuming GMO feed or that the byproducts derived from these animals are

genetically modified.[7]  Therefore, Plaintiff's definition of non-GMO for Category 3 ingredients do

not require allegations of how animals are genetically modified from consuming GMO feed or

how the resulting byproducts are also genetically modified.

    Accordingly, the Court GRANTS Defendant's motion to dismiss claims based on the

"Category 2" ingredients, but will GRANT Plaintiff leave to amend.  The Court DENIES

Defendant's motion to dismiss claims based on the "Category 3" ingredients.

//

---

[6]     Further analysis into the reasonable consumer standard is addressed in the following section.

[7]     Defendant also argues that no reasonable consumer would understand Category 3 ingredients to constitute GMOs because, under federal law, regulations on bioengineered food "should exclude a bioengineered food solely because the animal consumed feed produced from, containing, or consisting of a bioengineered substance."  7 U.S.C. § 1639b(2)(A).  Plaintiff, however, alleges consumers have a broader understanding of the term "non-GMO."  (FAC ¶ 23.) The Court concludes this argument is best addressed in the context of a motion for summary judgment.

1

**3.      Plaintiff has alleged that a reasonable consumer could be deceived by Defendant's Non GMO Claim.**

2

3        Defendant also argues that no reasonable consumer could be misled by its Non GMO

4    Claim.  To state a claim under the FAL, CLRA, and UCL, Plaintiff must allege facts satisfying the

5    "reasonable consumer" standard, *i.e.* that members of the public are likely to be deceived.  *See*

6    *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

7                 "Likely to deceive" implies more than a mere possibility that the
                 advertisement might conceivably be misunderstood by some few
8                 consumers viewing it in an unreasonable manner.  Rather, the phrase
                 indicates that the ad is such that it is probable that a significant
9                 portion of the general consuming public or of targeted consumers,
                 acting reasonably in the circumstances, could be misled.
10

11   *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

12        Whether a business practice is deceptive is an issue of fact not generally appropriate for

13   decision on a motion to dismiss.  *See, e.g.*, *Williams*, 552 F.3d at 938-39 (citing *Linear Tech.*

14   *Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)).  However, courts have

15   granted motions to dismiss under the UCL and similar statutes on the basis that the alleged

16   misrepresentations were not false, misleading, or deceptive as a matter of law.  *See, e.g.*, *Freeman*

17   *v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (holding that reading flyer as a whole dispelled

18   plaintiff's allegation that a particular statement was deceptive); *see also In re Sony Gaming*

19   *Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 989 (S.D. Cal. 2014).

20        Plaintiff alleges that reasonable consumers would understand the Non GMO Claim on the

21   front and rear of the packaging to mean that the Products "(1) [do] not contain GMOs and [are] not

22   sourced from, or derived from any GMOs; and (2) [do] not contain animal products . . . that have a

23   diet of GMO feed, GMO contaminated feed and/or genetically modified or engineered feed."

24   (FAC ¶ 28.)  Plaintiff alleges reasonable consumers have this understanding because of

25   educational efforts from third party verification agencies, such as the Non-GMO Project, which

26   has the same definition of non-GMO used by Plaintiff, and from government authorities.  (*Id.* ¶¶

27   24-26.)  Plaintiff points to market research that supports this consumer understanding of the claim

28
                                        11

1   "non-GMO."  (*Id.* ¶¶ 27-28.)  Plaintiff further alleges that the inclusion of the Statement "not

2   made with genetically engineered ingredients" under the words "non-GMO" would not matter to a

3   reasonable consumer because consumers use these terms interchangeably and understand them to

4   be the same.  (*Id.* ¶ 37.)

5        Defendant contends that Plaintiff's theory of consumer deception fails because a

6   reasonable consumer would not interpret Defendant's Non GMO Claim to be equivalent to the

7   Non-GMO Project's definition of GMO.  Defendant also contends no reasonable consumer would

8   confuse Defendant's Image with the Non-GMO Project's seal.  In support of its argument,

9   Defendant relies on *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773

10  (S.D.N.Y. Mar. 18, 2022).

11       In *Gordon*, the plaintiff challenged the graphic on the defendant's product, which was

12  labeled "non-GMO" and contained the sub-heading: "ingredients not genetically engineered."  *Id.*

13  at *5.  The plaintiff also alleged that the defendant included the graphic to mislead consumers into

14  believing the product was verified by the Non-GMO Project.  *Id.*  The district court explained that

15  the Non-GMO Project's seal was highly distinctive because it included the organization's name,

16  the word "verified," the URL for the Non-GMO Project's website, and a graphic of an orange

17  butterfly with a blade of grass.  *Id.* at *12.  The court found the product's labeling was not

18  misleading and did not mimic the Non-GMO Project's seal because the only similarity between

19  the Non-GMO Project's seal and the product's non-GMO graphic was the use of the term "non-

20  GMO."  *Id.*  The court held that it was patently implausible and unrealistic for a reasonable

21  consumer to see the product's non-GMO graphic and believe the product was verified by the Non-

22  GMO Project.  *Id.*

23       The Court finds *Gordon* distinguishable on its facts.  Unlike in *Gordon*, where there was

24  only one similarity between the Non-GMO Project's seal and the defendant's non-GMO graphic,

25  Defendant's Image has more similarities to the Non-GMO Project's seal.  For example,

26  Defendant's Image contains capitalized "NON GMO" text and a V-shaped leaf-like graphic in the

27  corner:

28





**Non-GMO Project's Verified Seal**          **Target's Stamp**          **Gerber's Stamp**

The Court concludes that Plaintiff sufficiently alleges similarities that could give reasonable consumers the impression that Defendants' products met the Non-GMO Projects' standards.  (*See* FAC ¶ 37.)  *Cf. Rankin v. Arca Cont'l S.A.B. de C.V.*, No. 20-CV-1756 (ENV) (TAM), 2022 U.S. Dist. LEXIS 103573, at *15 (E.D.N.Y. June 9, 2022) (finding a reasonable consumer could be misled with defendant's green, V-shaped graphic atop the capitalized sans serif "NON GMO" text).  Further, Plaintiff cites to various sources to illustrate the prevalence of the Non-GMO Project.  For example, Plaintiff alleges that the work of the Non-GMO Project is well known because the seal is found on over 50,000 food products and the Non-GMO Project website has over 200 million visits a year.  (FAC ¶ 24.)  A fact finder could conclude that the recognizability of the Non-GMO Project's seal "could actually be a source of . . . confusion" between Defendant's Image and the Non-GMO Project's seal.  *Rankin*, 2022 U.S. Dist. LEXIS 103573, at *16.

Plaintiff also cites to the efforts by the federal government to adopt standards for non-GMO labeling and to market research into a reasonable consumer's interpretation of non-GMO. (FAC ¶¶ 26-27.)  Other courts have found that these additional sources are enough to support an allegation that a reasonable consumer would be deceived.  *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2016 WL 6563348, at *2 (N.D. Cal. Nov. 4, 2016) (finding that plaintiff sufficiently alleged that a reasonable consumer would be deceived based on allegations of definitions used by the Non-GMO Project and the federal government, as well as market research and surveys in consumers' reasonable interpretations of the phrase).

Defendant also argues a reasonable consumer could review the Products' ingredient lists to determine whether the Products contain GMOs and argues the Statement serves as qualifying

language to signal to consumers that the Products do not contain genetically engineered ingredients.  The Ninth Circuit recently considered this issue in *Moore v. Trader Joe's Corporation,* 4 F.4th 874, 883 (9th Cir. 2021).  In *Moore*, the plaintiffs challenged the labeling of the defendant's Manuka honey products, which stated the products contained "100% New Zealand Manuka Honey" or "New Zealand Manuka Honey" on the front of the product and listed Manuka honey as the sole ingredient.  *Id.* at 876, 878-79.  The plaintiffs alleged the labels were deceptive because only 57.3% to 62.6% of the honey was derived from Manuka nectar.  *Id.*; *see also id.* at 880.  The defendant moved to dismiss and argued no reasonable consumer would be deceived by its labels.

The Ninth Circuit agreed.  It first noted that the defendant's front labels complied with the FDA's labelling requirements.  *Id.* at 881.  The court then addressed the plaintiffs' argument that the label could still "mislead consumers into thinking that the honey was '100%' derived from Manuka flower nectar."  *Id.*  The court acknowledged there was some ambiguity in the label and then discussed a case on which the district court relied, which set forth the principle that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used."  *Id.* at 882 (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)).

In *Bell*, the plaintiffs argued the labels on the defendant's products were deceptive because they included a representation of "100% Grated Parmesan Cheese" on the front but actually contained other ingredients.  The defendant included the other ingredients on the rear of the package.  982 F.3d at 473.  In *Moore*, the Ninth Circuit reasoned that the court in "*Bell* was justifiably concerned about the possible confusion created by manufacturers who claim (in an arguably ambiguous fashion) that the product is 100% cheese," knowing it is not, "and who then try to retain some 'level of deniability' by clarifying the front-label claim with back label disclosures."  *Moore*, 4 F.4th at 883.  The court reasoned that the defendant in *Moore* did not engage in such conduct because it did "not insert any additional ingredients to produce the product or mix Manuka honey with other, non-Manuka honeys to dilute it[.]"  *Id.*  Therefore, "the potential confusion" that concerned the Seventh Circuit in *Bell* "was not present in the same way" for the

1    defendant's label.  *Moore*, 4 F.4th at 883.  The court also reasoned that other factors would

2    preclude a reasonable consumer from adopting the plaintiffs' interpretation of the label, which

3    included not only the impossibility of creating honey from one source of nectar, as well as the low

4    price and a grading scale on the front of the label.  *Id.* at 883-84.

5         The Court finds Defendant's argument that a reasonable consumer can review the

6    ingredient lists to determine whether they are or are not "Non GMO" unconvincing at this stage of

7    the case.  Similar to *Bell*, but unlike *Moore*, Defendant is attempting to undermine the Image on

8    the front of the packaging with the Statement and ingredient list on the rear of the packaging.

9    Plaintiff has plausibly alleged that Defendant's Non GMO Claim is misleading, and that problem

10   is not necessarily cured by a disclosure somewhere else on the packaging.  *See Williams*, 552 F.3d

11   at 939-40 ("We do not think the FDA requires an ingredient list so that manufacturers can mislead

12   consumers and then rely on the ingredient list to correct those misinterpretations and provide a

13   shield for liability for the deception.  Instead, reasonable consumers expect the ingredient list

14   contains more detailed information about the product that confirms other representations on the

15   packaging.").

16        Further, the Statement does not clearly dispel the alleged confusion.  As discussed above,

17   the prevalence of the Non-GMO Project's definition could lead a reasonable consumer to believe

18   Defendant's Non GMO Claim would not include genetically modified ingredients or byproducts

19   sourced from animals who are fed with genetically modified feed.  Thus, the Statement would not

20   serve as an unambiguous disclaimer because consumers may already assume the Non GMO Claim

21   would encompass a lack of genetically engineered ingredients.

22        Defendant also argues Plaintiff did not allege sufficient facts to establish the widespread

23   presence of GMOs in certain domestically produced crops because Plaintiff makes conclusory

24   allegations based on generalized statistics and processes.  *See Forsher v. J.M. Smucker Co.*, No.

25   5:19-CV-00194, 2020 WL 1531160, at *5 (N.D. Ohio Mar. 31, 2020) (finding plaintiff failed to

26   reach the bar of plausibility required at the pleading stage because generalized statistics were the

27   only piece of information plaintiff relied to allege the products contained sugar derived from GMO

28   beets).  For example, Defendant notes that Plaintiff alleges that 92% of corn grown in the United

*United States District Court*
*Northern District of California*

States is genetically modified, and therefore, cows who feed on corn are likely consuming genetically modified corn.  (FAC ¶ 16.)  However, Plaintiff alleges other facts that, when taken in combination with the generalized statistics, plausibly state a claim for relief.

For example, Plaintiff alleges independent testing from GMO Free USA, a 501(c)(3) nonprofit organization, that confirms the presence of GMOs in at least one of Defendant's Products.  Furthermore, Plaintiff takes "general, but overwhelming, statistic[s] about genetically modified crops in the United States and plausibly connect[s] [them] to the relevant ingredients found in [Defendant's] [P]roducts."  *In re KIND LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 467 (S.D.N.Y. 2018).  "This is not an implausible inference to make on a motion to dismiss."  *Id.; see also Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC), 2014 WL 1998235, at *5 n.4 (S.D.N.Y. May 15, 2014) (plaintiff's reliance on generalized statistics to demonstrate that most vegetable oils contain GMOs allowed the court "to make a logical leap from 'some crops grown in the United States are GMO' to 'the Crisco oils contain GMO ingredients'").

Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in her favor, the Court concludes that Plaintiff has plausibly stated that a reasonable consumer would be deceived by the Non GMO Claim on the Products' labels.  According, the Court DENIES Defendant's motion to dismiss on this basis.

### 4.     Plaintiff plausibly alleges Defendant violated the UCL.

Plaintiff also alleges Defendant violated the UCL, which prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL.  Cal. Bus. & Prof. Code § 17200.  Defendant argues that Plaintiff's UCL claim fails because she does not allege any unlawful or unfair conduct.  Defendant also argues Plaintiff's UCL claim fails because she does not sufficiently allege a false or misleading statement.  For the reasons set forth above, Plaintiff sufficiently alleges the Non GMO Claim would deceive a reasonable consumer.  Accordingly, she has stated a claim under the UCL's fraudulent prong and the Court DENIES Defendant's motion to dismiss this claim.  Defendant may renew its arguments about whether Plaintiff is able to prevail under each prong by way of a motion for summary judgment.

16

**5.      Plaintiff states a claim for breach of warranty.**

Defendant argues that Plaintiff fails to state a breach of warranty claim because she does not plausibly allege the Non GMO Claim was false or misleading.  As discussed above, Plaintiff sufficiently alleges that a reasonable consumer could be deceived.  Accordingly, the Court DENIES Defendant's motion to dismiss this claim.  *Moran*, 2022 WL 1288984, at *5 (after finding the consumer protection claims could proceed, the court denied defendant's motion to dismiss plaintiff's breach of warranty claims solely on the basis that they were derivative of plaintiff's consumer protection claims).

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, and DENIES, IN PART, Defendant's motion to dismiss.  Plaintiff may file an amended complaint by no later than January 27, 2023, and Defendant shall answer or otherwise respond by February 17, 2023.  The parties shall appear on March 17, 2023 at 11:00 a.m. for an initial case management conference, and they shall file a joint case management conference statement by March 10, 2023.

**IT IS SO ORDERED.**

Dated: January 6, 2023

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

17